**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0249-22

EDWARD BRUECK,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

WAWA, INC., and SHERWIN
WILLIAMS COMPANY,

    Defendants-Respondents/
    Cross-Appellants,

and

ASPHALT PAVEMENT
SOLUTIONS,

    Defendant-Respondent.

_____

Submitted December 20, 2023 – Decided May 17, 2024

Before Judges Accurso and Gummer.

On appeal from the Superior Court of New Jersey, Law
Division, Ocean County, Docket No. L-0293-19.

Starkey, Kelly, Kenneally, Cunningham, Turnbach & Yannone, attorneys for appellant/cross-respondent (Kevin N. Starkey, on the briefs).

Cooper Levenson, PA, attorneys for respondent/cross-appellant Wawa, Inc. (Jennifer Broeck Barr, Samantha Taylor Edgell, and William J. Kohler, on the briefs).

Campbell Conroy & O'Neil, PC, attorneys for respondent/cross-appellant The Sherwin-Williams Company[1] (Meaghann C. Porth, on the briefs).

Garvey Ballou, PA, attorneys for respondent Asphalt Pavement Solutions (Robert Anthony Ballou, Jr., on the brief).

PER CURIAM

On a rainy day, plaintiff Edward Brueck slipped and fell when he stepped on a yellow line painted between two parking spaces on the parking lot of a Wawa store. Plaintiff now appeals from an order granting defendants' summary-judgment motions, which were based primarily on the purported deficiencies of the report of plaintiff's liability expert witness. Defendants Wawa, Inc. and The Sherwin-Williams Company cross-appeal from an earlier order reopening discovery, permitting plaintiff to serve the expert's report, and denying without prejudice those defendants' initial summary-judgment motions. Based on our de

---

[1] This defendant uses this name in its brief. Some of the other parties and the trial court have used slightly different versions of the name in referencing this defendant.

A-0249-22

novo review, we affirm the order granting defendants' summary-judgment motions and, accordingly, dismiss as moot defendants' cross-appeals.

I.

We take these material facts from the summary-judgment record, viewing the evidence in a light most favorable to plaintiff, the non-moving party, and drawing all reasonable inferences in his favor. See Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023).

On the morning of November 22, 2017, plaintiff went to a Wawa store, where he purchased a coffee and a pastry. It had rained "very heavily" earlier that day, but by the time plaintiff arrived at the Wawa store, "it had started to lighten up or even stop." At about 8:30 a.m., plaintiff, who was wearing rubber-soled shoes, exited the store. He walked along a concrete walkway on the left side of the building, stepped off the walkway onto the parking lot, and took one or two steps. He placed his left foot on top of a yellow line painted between two parking spaces on the asphalt of the parking lot, his "foot went out from under" him, and he landed on his left hip. The parking lot and the painted line he stepped on were wet. Plaintiff did not see anything else on the ground. According to plaintiff, the cause of the wetness was rain and not some other substance. After the fall, plaintiff was taken by ambulance to a hospital. He

had a "left femoral neck fracture," and, two days after the fall, underwent surgery for a total left hip replacement.

According to plaintiff, the Wawa store was "new" and had been in existence for "a couple of years." The parking lot did not have any potholes or divots and "wasn't the old-needs-to-be-resurfaced parking lot you sometimes see." The painted line was "in good condition."

Pursuant to a March 8, 2016 "Parking Lot Service Agreement" between defendant Asphalt Pavement Services (APS) and Wawa, which had a two-year term ending on March 31, 2018, APS agreed to "stripe the entire lot" after first seal coating it. APS was expected to complete the line striping no later than August 1 of each year and was required to use Sherwin-Williams paint. In an April 14, 2017 invoice to Wawa, APS included charges for paint for "line striping." APS did not identify in the invoice the brand of the paint.

On February 1, 2019, plaintiff filed a complaint against Wawa, alleging Wawa had violated the duty of care it owed plaintiff as its business invitee. Plaintiff claimed Wawa had "owned, operated and maintained [the] premises in such a careless, reckless and negligent manner without due regard for the circumstances then and there existing causing the plaintiff to fall." Wawa answered the complaint and later filed an amended answer, with affirmative

A-0249-22

defenses and a third-party complaint against Sherwin-Williams and APS. After the court granted his motion for leave to amend, plaintiff filed an amended complaint, adding Sherwin-Williams and APS as direct defendants. Plaintiff alleged Sherwin-Williams and APS had carelessly, recklessly, and negligently supplied the paint to be used for the parking lot lines and performed the line striping, respectively.

Following several extensions requested by defendants, the discovery period ended on May 28, 2021. Plaintiff moved to extend discovery. In a certification in support of the motion, plaintiff's counsel described delays in completing depositions of defendants' representatives and stated "it is critical to [p]laintiff's prosecution of this case that [p]laintiff have an opportunity to serve an expert report on liability. . . . Plaintiff . . . has been awaiting the completion of fact depositions to finalize and serve such expert report." Plaintiff's counsel submitted with his reply to defendants' opposition to the motion a July 2, 2021 "engineering report" prepared by plaintiff's liability expert witness, Wayne F. Nolte, Ph.D., P.E.

Nolte inspected the accident site on a clear day, January 15, 2018, about seven weeks after plaintiff's fall. Nolte reported that during his inspection he had "sprayed water on the line" and then took measurements of "the Coefficient

5

of Friction . . . with an American Slip Meter in the [w]et [s]tate to duplicate the condition that existed at the time of [plaintiff's] fall." His measurements averaged 0.37, which, according to Nolte was "below the threshold value of 0.50 which acts as the divider between an unsafe walking surface and a safe walking surface. Coefficient of Friction values less than 0.50 reflect an unsafe walking surface." He cited the American National Standards Institute Standard A1264.2, which he quoted as "suggest[ing] a slip resistance guideline of 0.5 for walking surfaces in the workplace under dry conditions." Before he sprayed water on the line, Nolte measured a coefficient of friction of .58. Nolte also stated:

> The rain that fell on the day of [plaintiff's] accident was an expected environmental condition. Yet the surface of the paint did not contain slip resistant quality to hold his foot in place.
>
> It is not uncommon that oils and greases on paved surfaces such as the concrete and painted lines, where this accident occurred, rise when it rains. This creates a slick condition. Removing oils and greases from pavement surfaces reduces the probability of a slip condition such as that experience[d] by [plaintiff] on the day of this accident. The Property Maintenance Code in the Township . . . requires that the property be maintained in a safe condition. This requires the removal of oils and greases that will cause a slick condition on walking surfaces when it rains. The failure to maintain and the failure to have sufficient abrasive material on the painted line to compensate for foreseeability of rain caused this accident.

6

He concluded, among other things: "[t]he accident site was in [a] hazardous condition on the day of th[e] accident"; "[t]he hazardous condition was the presence of oils and greases along with inadequate slip resistant quality on the painted line that ultimately caused the slick condition that resulted in [plaintiff] slipping and falling"; and "[t]he presence of oils and grease on the painted line without sufficient abrasive material to compensate for that material being present onto the painted surface created a hazardous condition."

The motion judge denied plaintiff's motion to extend discovery, concluding "[e]xceptional circumstances [had] not [been] demonstrated." Wawa and Sherwin-Williams moved for summary judgment. Plaintiff moved for reconsideration of the order denying his discovery-extension motion and for leave to submit Nolte's report. The judge concluded plaintiff had demonstrated exceptional circumstances, and, in a September 10, 2021 order, granted plaintiff's motion, reopened and extended discovery, permitted service of Nolte's report, and denied without prejudice defendants' summary-judgment motions. The motion judge later denied Wawa's reconsideration motion, in which Sherwin-Williams had joined. We denied Wawa's motion for leave to appeal.

7

Wawa and Sherwin-Williams retained engineering experts who issued reports in which they challenged Nolte's methodology and conclusions. Defense counsel deposed Nolte.

During his deposition, Nolte testified he had not seen any oil or grease when he inspected the accident site but had "assumed there was [oil or grease] because of the amount of traffic that a Wawa store has" and because "the line in a wet condition was below the threshold value," which "would indicate to [him] the probability of oils and greases being on that painted surface . . . ." Nolte articulated a new theory of liability, comparing his coefficient-of-friction measurements of the dry walkway (.78) and the line after he had sprayed water on it (.37) and opining plaintiff had experienced without warning a fifty-three percent "reduction in the coefficient of friction" when he stepped on the line and fell. Nolte did not explain why he had compared measurements from a dry walkway to measurements of the wetted-down painted line.

Nolte asserted Wawa had an obligation to regularly clean its premises of oil and grease tracked in by vehicles and claimed certain businesses, which he did not identify, cleaned for oil and grease on a weekly basis. Nolte also testified he understood from Wawa's interrogatory answers that Sherwin-Williams paint had been used for the line striping and stated he "d[id]n't recall the name of the

product, but [he] believe[d] Sherwin[-]Williams d[id] have an additive that c[ould] be put into its paint to enhance its slip-resistant quality." He also explained that he was not opining the paint had an inadequate slip-resistant quality but instead was opining about "the inadequate maintenance of the paint and . . . the probability of oils and greases from traffic at Wawa depositing on that line and creating the low coefficient of friction." He conceded he had not "specifically examine[d] for oils and greases," he had no opinion on whether the way the paint was applied to the parking lot was improper, and that Sherwin-Williams paint was appropriate for line striping in parking lots.

Defendants moved for summary judgment. In support of its motion, Wawa noted Nolte's assertion that "[p]laintiff's accident was caused by the presence of a foreign substance located on top of a painted line stripe where the [p]laintiff slipped" and highlighted the lack of evidence that any foreign substance was present on the stripe at the time of the fall. Sherwin-Williams asserted plaintiff had failed to "establish any negligence or defect in the design, manufacturing, assembly, packaging, marketing, or supplying [of] any Sherwin-Williams paint." APS argued its "only obligation to the plaintiff . . . [wa]s derived solely from its contractual duties," plaintiff had presented no evidence that APS had painted the line, APS had no duty to maintain the property, and

A-0249-22

plaintiff had provided no evidence that its line striping deviated from accepted industry standards. Wawa also moved to bar "plaintiff's liability expert under the net opinion rule."

After hearing argument, the judge on August 12, 2022, entered an order with a written statement of reasons granting defendants' summary-judgment motions, dismissing the complaint with prejudice, and denying the remaining motions as moot. Concluding Nolte's report and testimony consisted of inadmissible net opinion, the judge found Nolte had merely "speculate[d] as to whether foreign substances were present on the painted line stripe" and had not observed oil or grease on the painted line or tested for their presence. The judge concluded that without a factual basis supporting the presence of oil or grease, Nolte's entire theory of liability fell apart, "rendering his report unhelpful to a jury and therefore inadmissible."

The judge also found plaintiff had failed to show any evidence Wawa had actual or constructive notice of any dangerous condition and, thus, had failed to satisfy that required element of a premises-liability claim. The judge determined Nolte was "not qualified to speak on what businesses' maintenance schedules should look like" and plaintiff had presented no evidence of what "Wawa's maintenance schedule looked like, assuming it had one." Finally, the judge

concluded plaintiff had not presented evidence APS was negligent in its application of the paint or Sherwin-Williams was negligent in the manufacture of the paint, noting Nolte had conceded those defendants were not at fault.

Plaintiff appeals from the order granting defendants' summary-judgment motions. In the event plaintiff's appeal is successful, Wawa and Sherwin-Williams cross-appeal from the September 10, 2021 order. Reviewing defendants' latest summary-judgment motions de novo, we agree with Judge James Den Uyl's conclusions regarding Nolte's opinions and, consequently, affirm the August 12, 2022 order granting those motions. Because we affirm that order, we need not reach Wawa's and Sherwin-Williams's cross-appeals and, accordingly, dismiss them as moot.

## II.

We review a grant or denial of summary judgment de novo, applying the same legal standard as the trial court. Crisitello, 255 N.J. at 218. That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)).

11

"Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "We owe no deference to conclusions of law that flow from established facts." Crisitello, 255 N.J. at 218.

"To sustain a cause of action for negligence, a plaintiff must establish: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Funtown Pier Amusements, Inc. v. Biscayne Ice Cream, 477 N.J. Super. 499, 512 (App. Div. 2024) (quoting T.B. v. Novia, 472 N.J. Super. 80, 94 (App. Div. 2022)). A plaintiff "must establish the existence of negligence 'by some competent proof . . .' because '[n]egligence is a fact which must be shown and which will not be presumed.'" Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 25 (App. Div. 2021) (first quoting Townsend v. Pierre, 221 N.J. 36, 51 (2015); and then quoting Long v. Landy, 35 N.J. 44, 54 (1961)).

Rooted in "N.J.R.E. 703's requirement that expert opinions be supported by facts or data," Funtown, 477 N.J. Super. at 516, the net opinion rule "forbids the admission of an expert's conclusions when unsupported by factual evidence or other data," Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., L.L.C., 450

12

N.J. Super. 1, 95 (App. Div. 2017). The rule "prohibits experts from providing bare opinions that lack factual support," Fin. Servs. Vehicle Trust v. Panter, 458 N.J. Super. 244, 257 (App. Div. 2019), and "speculative testimony," Ehrlich v. Sorokin, 451 N.J. Super. 119, 134 (App. Div. 2017) (quoting Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013)). See also Townsend, 221 N.J. at 55 ("Given the weight that a jury may accord to expert testimony, a trial court must ensure that an expert is not permitted to express speculative opinions or personal views that are unfounded in the record."). "The 'key to admission' is the validity of the expert's 'reasoning and methodology,' and in that regard, a court's function 'is to distinguish scientifically sound reasoning from that of the self-validating expert, who uses scientific terminology to present unsubstantiated personal beliefs.'" Fairfax Fin. Holdings Ltd., 450 N.J. Super. at 95 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 414 (1992)). Unfortunately for plaintiff, his expert falls in the latter category.

Plaintiff contends Nolte's report "is entirely consistent with [p]laintiff's theory of liability, and supports [p]laintiff's version of events . . ." – but it isn't and it doesn't. Plaintiff's theory of liability is that he stepped on a painted line that was wet due to rain and his foot slipped. Nolte's theory is that oils and greases left on the parking lot due to Wawa's poor maintenance rose up when it

rained and created with the painted line the slick condition that caused plaintiff's fall.

Not only are Nolte's conclusions inconsistent with plaintiff's theory of liability, they are wholly unsupported by the facts.  The record is devoid of any evidence that oil and grease was on the lot at the site of the accident.  Plaintiff testified he did not see anything on the ground other than the painted line.  No other witness testified about seeing oil or grease on the lot.  Nolte never tested any paint, oil, or grease that might have been present at the accident site.  He did not examine the accident site – which he inspected more than seven weeks after the fall – for oils and greases.  He did not test the coefficient of friction of the accident site with oil or grease present.  Instead, he sprayed some water on the site, measured the coefficient of friction, and then judged those measurements based on a suggested guideline for "walking surfaces in the workplace under <u>dry</u> conditions."  (Emphasis added).

Nolte faulted Wawa for its maintenance of the parking lot when the record is devoid of any evidence as to what maintenance Wawa performs.  Nolte offered a new theory during his deposition, one he had not raised in his report:  the difference in the coefficient of friction between the walkway and the parking lot constituted a hazard.  But again, that theory is not supported by the facts.

14

Plaintiff didn't fall when he stepped off the walkway onto the parking lot; he fell when he had taken one or two steps.

Given Nolte's speculative and unsupported opinions, we discern no error in the judge's conclusions that Nolte's report and testimony were inadmissible under the net opinion rule and that plaintiff could not use them to prove his case. See Townsend, 221 N.J. at 55 ("A party's burden of proof on an element of a claim may not be satisfied by an expert opinion that is unsupported by the factual record or by an expert's speculation that contradicts that record."). We also agree with the judge that plaintiff otherwise failed to establish required elements of his claims.

Plaintiff failed to establish the required notice element of his premises-liability claim against Wawa. "When an invitee is injured by a dangerous condition on the business owner's premises, the owner is liable for such injuries if the owner had actual or constructive knowledge of the dangerous condition that caused the accident." Jeter v. Sam's Club, 250 N.J. 240, 251 (2022). "A defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting

Parmenter v. Jarvis Drug Store, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). "'Constructive notice can be inferred' from eyewitness testimony or from '[t]he characteristics of the dangerous condition,' which may indicate how long the condition lasted." Jeter, 250 N.J. at 251-52 (alteration in original) (quoting Parmenter, 48 N.J. Super. at 510). "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). The absence of actual or constructive notice of a dangerous condition "is fatal to [a] plaintiff's claims of premises liability."[2] Ibid.

Plaintiff offered no proof Wawa's employees were aware of any oil, grease, problem with the painted lines, or other dangerous condition in the area of his fall. Nothing in the record indicates Wawa either did or did not have a routine inspection program in place at the store that would or could have alerted it to any hazardous condition. Plaintiff has not identified any evidence that could support a finding that Wawa had actual or constructive notice of a

---

[2] We recognize that under a mode-of-operation theory of liability, a plaintiff does not have to prove actual or constructive notice. See Jeter, 250 N.J. at 252. Plaintiff does not contend the mode-of-operation exception applies in this case.

dangerous condition at the accident site. Accordingly, his claim against Wawa fails, and summary judgment was appropriate.

Plaintiff's claims against Sherwin-Williams and APS are based wholly on conjecture. His theory of liability as to these defendants is because he fell, there must have been something wrong with the paint and something wrong with how APS applied the paint. But we can't presume negligence; a plaintiff must prove it. <u>Franco</u>, 467 N.J. Super. at 25. And with no competent proof of negligence, plaintiff's claims against these defendants also fail, rendering summary judgment appropriate.

Affirmed as to plaintiff's appeal; dismissed as moot as to defendants' cross-appeals.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION